UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60306-Civ-LENARD
MAGISTRATE JUDGE P.A. WHITE

MYRON C. FRANKLIN,                :

    Petitioner,               :

v.                                :        REPORT OF
                                           MAGISTRATE JUDGE
EDWIN G. BUSS,            :

    Respondent.               :
_____

## I. Introduction

Myron Franklin, who is presently confined at the Columbia Correctional Institution in Lake City, Florida, has filed a *pro se* petition for writ of habeas corpus pursuant to Title 28, Section 2254, attacking his conviction and sentence in case number 01-20804, entered in the Seventeenth Judicial Circuit Court for Broward County.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

The Court has before it the petition for writ of habeas corpus (DE# 1), the Respondent's response to an order to show cause (DE# 11), appendix of exhibits (DE# 12), and Franklin's reply (DE# 14).

Construing the *pro se* movant's arguments liberally, he appears to raise the following claims in his Section 2254 petition:

1.   Counsel was ineffective for failing to request a

race- and gender-neutral reason to support the State's peremptory strike of the only African-American woman on the jury panel;

2.   Counsel was ineffective for failing to move to strike two biased jurors for cause and/or exercise peremptory strikes, which deprived him a fair trial;

3.   Counsel was ineffective for failing to object and move for a mistrial when the prosecutor improperly vouched for the credibility of a police officer during closing argument;

4.   Counsel was ineffective for failing to move for judgment of acquittal due to insufficient evidence of willfully fleeing from detectives who were in unmarked cars and plain clothes, and Franklin was the passenger, not a driver;

5.   Counsel was ineffective for failing to file a motion to suppress where officers lacked a founded suspicion to conduct an investigatory stop; and

6.   The State courts deprived Franklin of Due Process and Equal Protection by failing to grant him an evidentiary hearing on Claims (1) and (2).

## II. Procedural History

Franklin was charged with: Count (1), attempted robbery; Count (2), aggravated fleeing and eluding; and Count (3), grand theft of a motor vehicle. (DE# 12-4 at 63).

During jury selection, prospective juror Tamika Jones stated her father had been arrested three or four years previously for drunk driving, was roughed up by Ft. Lauderdale police and injured, and went to court as a result. She stated she could set aside this experience and decide the case based on the evidence. (DE# 12-3 at 58).

Defense counsel asked how jurors "feel about" the State's

2

burden of proof and whether they "really want[ed] to hear both sides." (DE# 12-4 at 8). Several jurors said yes, including Barbara Geiske. (DE# 12-4 at 9). Counsel further asked whether they "would have an expectation for the defense to prove to you innocence," and several jurors said yes, including Jones and William Harrison. (DE# 12-4 at 11). The prosecutor interrupted and asked the Judge to clarify "feelings versus following the law." (DE# 12-4 at 12). The Court instructed the venire regarding the presumption of innocence and State's burden of proof and clarified that the defense need not present any evidence whatsoever. The following then transpired:

> THE COURT: ... And the question that I need to know, Mr. Javier, if you want to, because so far I have not heard any legal grounds for this Court to find anyone having a problem by way of feelings, is whether they can follow the law that I'm going to give you. And if the defendant does not testify, will they be using that against the defense and not be a fair and impartial juror in this case.
>    Mr. Javier, you can proceed.
> MR. JAVIER: Thank you, Judge. I guess we're all human beings, we have feelings. But those feelings are going to go in with you into that jury room.
>    So those of you that have raised your hand, is there anyone, as you sit here right now, say 'I feel that way, and I'm going to use that and it's going to remain with me and I will not be able to follow the law as instructed because of my feelings, and I'm going to expect the defendant, the defense, to persuade me that he's innocent'?

(DE# 12-4 at 13-14).

Several jurors stated they were still unsure of their ability to follow the law. Others stated they would follow the law, including Jones. (DE# 12-4 at 14). Neither Harrison nor Geiske made any further comment on the matter.

The parties accepted Harrison and Geiske but the prosecutor exercised a peremptory strike against Jones. (DE# 12-4 at 21). Defense counsel did not ask for a genuine and neutral reason for the strike and the prosecutor was silent on the matter. After the jury and alternates were chosen, the court asked Franklin whether he approved of the jury:

> THE COURT: ... Mr. Franklin, were you present during the entire jury selection?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Were you sitting right next to your lawyer during the entire jury selection?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: And did, you, in fact, participate in jury selection in discussing with your lawyer who you liked and who you didn't like as jurors, questions to ask?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Are you satisfied with the process of jury selection?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Are you satisfied about the services that you have received from your lawyer?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Are these the jurors that you have selected?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Any questions or anything that you wish to bring to the Court's [attention]?
> THE DEFENDANT: Why was Tamika Jones scratched, ma'am?
> ...
> THE COURT: The State used a peremptory, one of their peremptory strikes on her.
> THE DEFENDANT: Yes.
> THE COURT: Anything else or any other thing you would wish to bring to the Court's attention?
> THE DEFENDANT: No, ma'am.

(DE# 12-4 at 34-35).

James Young, a bank robbery detective, testified he led an undercover surveillance team observing the activities in a bank's parking lot. (DE# 12-5 at 43). He was in an unmarked car wearing plain clothes with his badge visible and a marked sheriff vest.

(DE# 12-5 at 45-46). At approximately 11:05-11:10 AM, a gold Mazda with one subject inside drove through the bank's parking lot very slowly, looking at bank's front entrance. (DE# 12-5 at 52). At approximately 11:15 AM, a black Monte Carlo with light tinted windows drove very slowly past bank taking the same route as the Mazda. Three subjects were inside the car looking toward bank. (DE# 12-5 at 53). The Monte Carlo came back for a second time and parked in parking space in front of bank. After a minute or two, the three occupants made a motion in unison of reaching to top of heads and pulling something down. (DE# 12-5 at 55-57). Young made a radio call for the team to move in and take down the Monte Carlo. (DE# 12-5 at 58). Sergeant Wesolowski pulled in behind the Monte Carlo and other takedown team members moved in wearing their Sheriff vests, shouting. The Monte Carlo backed up toward Wesolowski and hit his car. Detectives Pulito and Donadio opened fire at the vehicle but it did not stop. It ran over a parking bumper and drove between trees and came out on road. (DE# 12-5 at 58); (DE# 12-5 at 141). Young pursued in his undercover car with the blue light on. (DE# 12-5 at 61). Young's vehicle was immediately behind the Monte Carlo, then behind him were marked vehicles bearing the BSO insignia with their sirens activated. He followed the Monte Carlo through a warehouse district. He saw the passenger door open and recognized the individual who looked out and tossed what he believed to be a gun. The Monte Carlo had no tag, was traveling at speeds up to seventy miles per hour, drove up on a sidewalk, and ran stop signs. (DE# 12-5 at 65). The Monte Carlo finally stopped in a residential area when a tire blew out. (DE# 12-5 at 62-63). During the chase, Young recognized the back-seat passenger as Chauncey Holmes, and the front passenger as Kelvin Gibson. (DE# 12-5 at 63). Young saw Franklin exit the Monte Carlo's driver's door and Young identified him in court. (DE# 12-5 at 66). Young explained he was able to make these observations because he was

lead car immediately behind the Monte Carlo and was trained to focus on the driver in chase situations. All the subjects exited the car. Gibson and Franklin were apprehended after a short foot chase. Franklin had sustained a gunshot wound to his hand/wrist area. (DE# 12-5 at 12). Holmes avoided capture but was apprehended the next day. The same Mazda that had driven by the bank before the attempted robbery was found two or three blocks away from the bank at a park. It was  backed in, unlocked, with the key in the ignition, and clothing inside. (DE# 12-5 at 70).

The Monte Carlo's owner testified it had been stolen the night before the attempted robbery. (DE# 12-5 at 42). A search of the vehicle revealed it had a broken steering column and was started with a screwdriver. (DE# 12-6 at 62-63). There was blood in driver's side and on pillow case. (DE# 12-6 at 69). Officers found a semiautomatic pistol, seven live rounds, three pairs of socks, a black knit cap, torn remnants of shirt, two pillow cases, and the license plate inside the Monte Carlo. (DE# 12-6 at 39, 46, 55).

A latent print examiner testified Franklin's fingerprints matched latent prints that officers lifted from the Mazda driver's door, the Monte Carlo's hood, and the bottom of the pistol's magazine. (DE# 12-7 at 45, 47, 49, 51). Other prints taken from the Monte Carlo and Mazda matched Kelvin Gibson. (DE# 12-7 at 53-55).

Defense counsel moved for judgment of acquittal arguing, among other things, that there was insufficient proof to support the fleeing charge because there was no verbal directive to stop, it was a circumstantial evidence case, and the towing slip for the Monte Carlo indicated that Kelvin Gibson was the driver rather than Franklin. (DE# 12-7 at 67-74). The court denied the motion.

The defense did not call any witnesses but published the Monte Carlo's towing slip to the jury, which indicated Kelvin Gibson was the driver. (DE# 12-8 at 13).

The defense argued in closing that there was insufficient evidence to conclude that Franklin was in the drivers' seat or that he had the intent to rob the bank. (DE# 12-8 at 15).

The State argued that Detective Young's testimony was credible and allowed him to deduce that Franklin was the Monte Carlo's driver:

> So he's already focused in on the driver based on his training and experience. And we told you in voir dire, you treat police officers equally. Don't judge them one way or the other, good or bad just because they're a police officer, but guess what. You can take their training and experience into account in judging their credibility and determining their opinions.
>
> They have any specialized training. He's been a police officer - he's retired now - for 21 years. He was not only a robbery detective, he was coordinator for the are for potential bank robberies. He was in the Counterterrorism Division in the Broward Sheriff's Office. Given this day and age, that's a division we have now.
>
> So you can take his training and experience, 21 years as a police officer, because you know part of this cross was "Wait a minute. You're driving, you've got your radio on, you're trying to communicate where you're going and keeping an eye on the car."
>
> Well, he has specialized training. Everyone in their daily lives can do things that other people would find very incredible because that's what they do for a living. They have specialized experience, specialized training.
>
> So I ask you when you consider - and I think this may be a rebuttal argument, certainly, during cross, how can you take - use your common sense that's reasonable. He can focus in on all these things.
>
> Take this to account, what he's learned, what he's trained, and his experience in police chases and surveillances and trained where to look and what to look

7

to as a police officer given those 21 years. Not just
because he's a police officer, but based upon his
experience and training as such.

(DE# 12-8 at 59-61).

The court read the jury instructions then dismissed Brenda
Gieske because she was an alternate juror. (DE# 12-8 at 96). The
panel, including Harrison, found Franklin guilty of all three
charges. (DE# 12-8 at 102-03).

On appeal, Franklin argued: (1) the trial court erred by
denying the defense motion for judgment of acquittal based on a
lack of proof demonstrating an overt act undertaken by Franklin in
furtherance of robbery with a firearm. (DE# 12 at 3). The Fourth
District Court of Appeal *per curiam* affirmed on March 7, 2007.
Franklin v. State, 952 So. 2d 1202 (Fla. 4th DCA 2007) (4D06-1762).

Franklin filed a Rule 3.850 motion for post-conviction relief
on January 4, 2008, arguing counsel was ineffective for failing to:
(1) challenge and properly preserve the State's peremptory strike
of an African-American female juror as pretextual and not genuine;
(2) challenge for cause or exercise peremptory challenges against
jurors who were partial and unable to follow the law; (3) object
and move for mistrial when the prosecutor improperly vouched for a
police officer's credibility during closing argument; (4) raise and
specify elements of the offense not proved in a motion for judgment
of acquittal; and (5) file a motion to suppress evidence where
police lacked a founded suspicion to conduct an investigatory stop.
(DE# 12 at 52). The trial court denied relief because: (1) there
was no evidence that any of the seated jurors were biased or could
not follow the law; (2) counsel was not deficient for failing to
challenge Gieske and Harrison, further, there is no prejudice

because Gieske was an alternate juror and Harrison was not actually biased; (3) the argument was not improper, so counsel was not deficient for failing to object and no prejudice could have resulted; (4) the claim of ineffective assistance is refuted by the record because counsel presented a thorough motion for judgment of acquittal; and (5) Franklin has failed to demonstrate prejudice because the evidence did not support suppression and instead revealed the stop was adequately supported. (DE# 12 at 109); see (DE# 12 at 75).   The Fourth District *per curiam* affirmed. Franklin v. State, 44 So. 3d 1184 (Fla. 4th DCA 2010) (4D09-4779). The mandate issued on November 19, 2010. (DE# 12-2 at 59).

Franklin filed the instant petition on February 7, 2011.[1]

## III. Statute of Limitations & Exhaustion

The State does not assert any statute of limitations or procedural bar.

## IV. Standard of Review

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

---

[1] The Eleventh Circuit recognizes the "mailbox" rule in connection with the filing of a prisoner's petition for writ of habeas corpus. Adams v. United States, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11th Cir. 2002) (citing <u>Williams</u>, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Sec'y, Dep't of Corr.</u>, 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. <u>Id.</u> Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).

In the instant case, the Petitioner seeks habeas relief based on ineffective assistance of counsel. The United States Supreme Court clearly established the law governing such claims in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Strickland</u> requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. <u>Id.</u> at 690. As to

the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. Strickland, 466 U.S. at 697.

## V. Discussion

(1)  Ineffective Assistance: Batson

Franklin contends counsel was ineffective for failing to request a race- and gender-neutral reason to support the State's peremptory strike of Jones, who was the only African-American woman on the venire.

The United States Supreme Court laid out a three-part test to evaluate the validity of challenges to peremptory strikes in Batson v. Kentucky, 476 U.S. 79 (1986). First, a moving party must make a prima facie showing that a peremptory challenge has been exercised on the basis of race or gender. Id. at 95-97. Once this requirement has been satisfied, the non-moving party must offer a race or gender-neutral basis for striking the juror in question. Id. at 97-98. This reason need not be persuasive or even plausible so long as it is not inherently discriminatory. Purkett v. Elem, 514 U.S.

765, 767-68 (1995). Third, in light of both parties' submissions, the trial court must determine whether the moving party has shown purposeful discrimination. <u>Batson</u>, 476 U.S. at 98. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion" regarding discriminatory motivation never shifts from the opponent of the strike. <u>Purkett</u>, 514 U.S. at 768; <u>see</u> <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).

Franklin's claim that counsel should have raised a <u>Batson</u> objection when the State struck Jones fails because a valid reason for striking her clearly appears on the face of the record. Jones revealed during voir dire that her father had been arrested in Broward County three or four years earlier, was roughed up and injured, and went to court as a result. Reasonable counsel could have concluded that Jones' father's experience with the same sheriff's office that shot and arrested Franklin was a genuine race- and gender-neutral reason for peremptorily striking her. <u>See</u>, <u>e.g.</u>, <u>West v. Sec'y v. Dep't of Corr.</u>, 151 Fed. Appx. 820 (11th Cir. 2005) (counsel was not ineffective for failing to object to prosecutor's peremptory strike of a prospective juror whose prior arrests and feelings toward the prosecution in those cases established a valid race-neutral reason for the challenge); <u>see also</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 351 (2003) (prospective juror's brother's convictions for drug offenses were a race-neutral reason for striking that juror); <u>United States v. Alston</u>, 895 F.2d 1362, 1367 (11th Cir. 1990) (classifying prior involvement with drug offenses as race-neutral). Counsel was not deficient for failing to object under these circumstances and there is no reasonable probability of a different result if counsel had objected. <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009)(defense counsel not required to pursue every claim or defense, regardless

of its merit, viability or realistic chance for success); <u>Chandler</u> <u>v. Moore</u>, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

The State courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law.

(2)   <u>Ineffective Assistance: Biased Jurors</u>

Franklin argues counsel was ineffective for failing to move to strike two biased jurors for cause and/or exercise peremptory strikes, which deprived him a fair trial.

A juror is competent under Florida law if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." <u>Carratelli v. State</u>, 961 So. 2d 312, 324 (Fla. 2007). A juror must be excused for cause if any reasonable doubt exists as to whether he is impartial. <u>Banks v. State</u>, 46 So. 3d 989 (Fla. 2010); <u>Bryant v. State</u>, 656 So. 2d 426 (Fla. 1995).

(A)   William Harrison

Franklin is precluded from attacking counsel's effectiveness with regard to the Harrison because he accepted the jury, including Harrison, in open court. (DE# 12-4 at 34-35). He waived the present claim of ineffective assistance. <u>See</u>, <u>e.g.</u>, <u>Pelham v. Douberly</u>, 2007 WL 951728 (M.D. Fla. March 28, 2007) (claim that trial counsel was ineffective for accepting jury panel lacked merit where the record revealed the petitioner accepted the jury panel after consulting with his attorney); <u>Trotter v. State</u>, 576 So. 2d 693 (Fla. 4th DCA 2002) (defendant "cannot stand by silently while an objectionable juror is seated and then if the verdict is adverse, obtain a new trial"). Counsel cannot be deemed deficient for

failing to pursue this waived argument. <u>See</u> <u>Knowles</u>, 556 U.S. at 111; <u>Chandler</u>, 240 F.3d at 917.

(B)   Brenda Gieske

As previously stated, Franklin waived any objection to Gieske by accepting the jury in open court. Moreover, any deficiency by counsel could not have prejudiced Franklin because Gieske was an alternate juror and did not participate in deliberations or render the verdict. Accordingly, even if Franklin had not waived this claim, he would be unable to demonstrate prejudice because counsel's alleged deficiency could not have affected the fairness or outcome of trial.

The State courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law.

(3)   <u>Ineffective Assistance: Closing Argument</u>

Franklin contends counsel was ineffective for failing to object and move for a mistrial when the prosecutor improperly vouched for the credibility of a police officer during closing argument.

It is improper for a prosecutor to bolster a witness's testimony by vouching for his or her credibility. <u>Gorby v. State</u>, 630 So. 2d 544 (Fla. 1993). However, the prosecutor may summarize the witness's testimony and explain why a witness is credible. <u>See</u> <u>Lowe v. State</u>, 2 So. 3d 21 (Fla. 2008).

No bolstering occurred in the instant case. The prosecutor argued in closing that Detective Young was credible when he identified Franklin as the Monte Carlo's driver during the chaotic high-speed chase. The prosecutor submitted that Young was capable

of observing and identifying the driver due, in part, to his
experience and training as a police officer. This was a permissible
inference based on the evidence and did not constitute improper
bolstering. See, e.g., Oliver v. Wainwright, 795 F.2d 1524 (11th
Cir. 1986) (argument that sergeant's power of observation was
particularly acute due to his experience as a law enforcement
officer was a permissible inference from the evidence and was not
improper). Counsel was not ineffective for failing to make a
meritless objection and such an objection would not have probably
changed the outcome of trial, especially in light of the veritable
mountain of evidence of Franklin's guilt.

The State courts' rejection of this claim is not contrary to
or an unreasonable application of clearly established federal law.

(4)   Ineffective Assistance: Judgment of Acquittal

Franklin contends counsel was ineffective for failing to move
for judgment of acquittal due to insufficient evidence of willfully
fleeing where the pursuing detectives were in unmarked cars and
plain clothes, and Franklin was the passenger, not the driver.

This claim is conclusively refuted by the record. Counsel
moved for judgment of acquittal on the fleeing charge, arguing
there was no testimony that officers provided a verbal directive to
stop, that it was a circumstantial evidence case, and that the
Monte Carlo's tow slip indicated Kelvin Gibson - not Franklin - was
the driver. (DE# 12-7 at 74). Counsel raised all the arguments that
Franklin has identified and Franklin fails to identify any other
grounds that counsel should have, but did not, raise. The fact that
the court rejected counsel's arguments does not mean counsel
rendered ineffective assistance.

The State courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law.

(5)   <u>Ineffective Assistance: Motion to Suppress</u>

Franklin contends counsel was ineffective for failing to file a motion to suppress where officers lacked a founded suspicion to conduct an investigatory stop.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." <u>Whren v. United States</u>, 517 U.S. 806, 809–10 (1996). It is well established that a "law enforcement officer may conduct a brief investigative stop of a vehicle, analogous to a <u>Terry</u>-stop,[2] if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." <u>United States v. Harris</u>, 928 F.2d 1113, 1116 (11th Cir.1991) (internal quotation marks omitted). Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers would cause a prudent person to believe that the suspect has committed or is committing an offense. <u>Beck v. Ohio</u>, 379 U.S. 89 (1964); <u>Craig v. Singletary</u>, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc).

Counsel was not deficient for failing to file a motion to suppress because officers had at least a reasonable suspicion to

---

[2] <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

stop the Monte Carlo. Officers observed a Mazda slowly drive past
the bank's front entry. A short time later, three individuals in a
different car slowly drove past the bank's front entry twice. The
second time, they stopped and parked in front of the bank and made
a motion as though pulling hats or masks over their heads,
suggesting they were about to rob the bank. This gave officers, at
a minimum, a reasonable articulable suspicion that a robbery was
about to occur that justified a traffic stop. When officers
approached, the Monte Carlo rammed an officer's car, refused to
stop even after officers opened fire, and led police on a high-
speed vehicle chase and foot chase. See State v. Lopez, 29 So. 3d
399 (Fla. 3d DCA 2010) (reasonable suspicion existed where officer
saw transaction in parking lot that led him to believe defendant
was the principal or accomplice in a drug transaction); State v.
Gandy, 766 So. 2d 1234 (Fla. 1st DCA 2000) (flight is a relevant
factor in determining whether reasonable suspicion existed); see
also United States v. Bryant, 334 Fed. Appx. 259 (11th Cir. 2009)
(reasonable suspicion existed where officer observed two cars
stopped in road next to each other pointing in opposite directions
in a known drug area, and left as soon as police car came into
view); United States v. Harris, 526 F.3d 1334 (11th Cir. 2008)
(reasonable suspicion existed where officer observed defendant
remove a dark object that appeared to be a handgun from behind some
bushes immediately before getting into a taxi). Reasonable counsel
would not have filed a motion to suppress under these
circumstances. See Knowles, 556 U.S. at 111; Chandler, 240 F.3d at
917. Moreover, Franklin cannot demonstrate prejudice because any
motion to suppress on these grounds would have been denied. See
Pugh v. McNeil, 2008 WL 1931359 (M.D. Fla. May 2, 2008) (even if
counsel was deficient for failing to file motion to suppress,
petitioner could not demonstrate such a motion would have been
granted to satisfy Strickland's prejudice prong).

The State courts' rejection of this claim is not contrary to or an unreasonable application of clearly established federal law.

(6) <u>Trial Court Error: Evidentiary Hearing</u>

Finally, Franlin contends the State courts deprived him of Due Process and Equal Protection by failing to grant him an evidentiary hearing on Claims (1) and (2).

Federal habeas relief is available only to correct constitutional injury. 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a); <u>see</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (holding errors that do not infringe a defendant's constitutional rights provide no basis for federal habeas corpus relief); <u>Barclay v. Florida</u>, 463 U.S. 939, 958-59 (1983) ("[m]ere errors of state law are not the concern of this court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted). Questions of state law and procedure "rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1053-54 (11th Cir. 1983)). Habeas review of a state law claim is therefore precluded if no due process violations or facts indicating such violations are alleged. This limitation is of equal force when a petition involving state law issues is "couched in terms of equal protection and due process." <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

This claim is not cognizable on federal habeas review because it fails to allege the deprivation of a federal constitutional

right. There is no federal constitutional right to post-conviction review of a criminal conviction beyond a direct appeal. McKane v. Durston, 153 U.S. 684 (1894); see also Griffin v. Illinois, 351 U.S. 12 (1956). Therefore, Franklin's argument the State court inadequately reviewed his post-conviction motion merely attacks alleged infirmities in a State post-conviction proceeding. See, e.g., Roberts v. McDonough, 2008 WL 2782814 (S.D. Fla. July 16, 2008). Franklin is not entitled to habeas relief on this claim because no federal constitutional right is implicated. See Branan, 861 F.2d at 1508.

## VI. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied, and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 16<u>th</u> day of August, 2011.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Myron C. Franklin, *pro se*
     DC# L00647
     Columbia Correctional Institution
     253 SE Corrections Way
     Lake City, FL 32025-2012

     James Joseph Carney, AAG
     Office of the Attorney General
     1515 North Flagler Drive
     Suite 900
     West Palm Beach, FL 33401-2299